### DAVID LESTER agt. GROW BLODGETT.

*Facts and circumstances* should be fully, particularly and positively stated, in an affidavit to hold to bail. Where the original affidavit to hold to bail is held insufficient, on motion, it is then too late to offer additional affidavits for that purpose.

*April Term,* 1846.

MOTION by defendant to vacate an original order to hold to bail.

This suit was commenced by capias, and an order indorsed upon it by the recorder of Buffalo, holding defendant to bail in $2,000. The *ac etiam* clause was stated as follows: "And also to a bill of the said plaintiff against the said defendant, for making certain false and fraudulent representations to the said plaintiff, by means of which the said defendant procured the said plaintiff to purchase of him a certain bond and mortgage, at and for and to pay therefor a much larger sum than the same was worth, to the said plaintiff's damage of $3,000." The affidavit, upon which the order to hold to bail was granted, was as follows: "Erie county, ss., Latham A. Burrows, of Buffalo, in the said county, being duly sworn, deposes and says, that in the months of February and March, 1844, he acted as the agent of David Lester, of the city of Brooklyn, in purchasing from Grow Blodgett, of New Fane, in the

county of Niagara, a certain bond and mortgage executed by William Boss to the said Blodgett, and then held by the said Blodgett, which mortgage was upon certain lands in the town of Hartland, in the said county of Niagara; that, during the negotiation which resulted in the said purchase, the said Blodgett represented to this deponent, acting as such agent, that the land embraced in the said mortgage was a certain improved farm lying on the road leading north from Hartland Corners in the said county of Niagara, and about one and a half miles north from said Corners, that there was a house and other farm buildings on the said land, and that [*111] a large portion of the same was *under improvement and cultivation : and this deponent further says that the quantity of land embraced in the said mortgage was one hundred and one acres, as was stated in the said mortgage, and as was then represented to this deponent by the said Blodgett, and that the same, had it been located and been improved and built upon, as it was represented to be by the said Blodgett as above stated, would have been worth about twenty dollars per acre. And this deponent further says, that after the said representations were made by the said Blodgett, and before the said purchase was finally consummated, this deponent caused his son, Roswell L. Burrows, of Albion, in the county of Orleans, to go to the said town of Hartland, to look at the said premises; and that the said Blodgett, as this deponent is informed by the said Roswell L., and also by the said Blodgett himself, and verily believes to be true, then showed to the said Roswell L. a farm lying on a traveled road leading north from the said Hartland Corners, and about one and a half miles north from the said Corners, which farm, as this deponent is informed by the said Roswell L., and believes to be true, was about two-thirds of it under cultivation and improvement, and had upon it a frame house and a log house and a barn, and was worth from twenty to twenty-five dollars per acre, and stated to the said Roswell L. that the same was the land embraced in the said mortgage.

And this deponent further says, that relying upon the representations of the said Blodgett so made to him and to the said Roswell L., as aforesaid, this deponent, acting as the agent of the said David Lester, purchased of the said Blodgett the said bond and mortgage, and in payment therefor gave to the said Blodgett the draft of this deponent upon the said David Lester, for the sum of $1,300, and agreed to procure for the said Blodgett a conveyance to him, from the said David Lester, of certain lands owned by the said David Lester, in the State of Illinois, and that thereupon the said mortgage was duly assigned by the said Blodgett to the said David Lester. And this deponent further says, that the said draft was duly paid by the said David Lester, in the month of March, 1844; and that this deponent procured for the said Blodgett the said conveyance of lands in Illinois, but the said Blodgett never called for the same, and the same was consequently not delivered to him. And this deponent further says, that since the said purchase and assignment of the said bond and mortgage, this deponent has ascertained that the land embraced in the said mortgage is not the same land described to this deponent by the said Blodgett and shewn to the said Roswell L., as aforesaid, but that it is a piece of entirely uncultivated and unimproved land, *without any buildings upon it, [*112] and not lying upon any open road, and worth not more, as this deponent is advised by persons who are well acquainted with the said land, and capable of estimating the value thereof, than the sum of $500 in the whole. And this deponent further says, that he verily believes that the said representations of the said Blodgett, made to this deponent and to the said Roswell L., as aforesaid, were known at the time by the said Blodgett to be false, and were made for the purpose of defrauding the said David Lester. And this deponent further says, that the bond of the said Wm. Boss, so assigned to the said David Lester, is worthless, for the reason that the said Boss, as this deponent is informed and believes, was, at the time of the said purchase and until his death, a man of little or no property, and is now dead; and that the

said Blodgett has not repaid any part of the said sum of $1,300, nor has anything been paid upon the said bond and mortgage, since the same became the property of the said David Lester; and that this deponent is the agent of the said David Lester for collecting the said bond and mortgage and his claims against the said Blodgett.

"And this deponent further says, that the said Blodgett has recently returned from an absence from home of more than three months, during which, some of the family connections of the said Blodgett stated to this deponent, and this deponent believes truly, that they did not know where he had gone, and were apprehensive that he would not return; that the said Blodgett, as this deponent is informed and believes, is in very embarrassed circumstances, and is menaced with various legal proceedings on account of alleged fraudulent transactions, and this deponent is apprehensive that, unless he is held to bail, he will soon depart out of this state, not to return thereto."

The defendant denied the allegation that he had left or intended to leave the state, and stated the particulars of his having been to Michigan temporarily, and denied generally that he was not and had not been menaced with various or any legal proceedings on account of alleged fraudulent transactions. About eight or ten months since, he made a general assignment for the benefit of his creditors. Defendant was imprisoned on the order to hold to bail.

> J. A. COLLIER, *defendant's counsel.*
> M. M. SOUTHWORTH, *defendant's attorney.*
> N. HILL, JR., *plaintiff's counsel.*
> L. A. BURROWS, JR., *plaintiff's attorney.*

BEARDSLEY, Justice. The facts and circumstances, to induce a belief that the defendant acted fraudulently in disposing of the bond and mortgage, should have been stated fully and particularly, as also should have been the [*113] *grounds for believing that the defendant intended to depart from the state. These grounds, as far as

any are disclosed in the affidavit, are slight and equivocal, nor are they stated with directness and particularity. They are also met and explained by the affidavit of the defendant, in which he denies any intention to leave the state. The affi-davits were not sufficient to justify an order to hold to bail, and additional affidavits could not now be received for that purpose. The motion must be granted. Motion granted, with costs.